UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PETROWORKS SA,                            }
                                          }
        Plaintiff,                        }
VS.                                       }     CIVIL ACTION NO. H-07-1919
                                          }
JAMES C ROLLINGS; aka JAKE                }
ROLLINGS; dba JAKE'S EQUIPMENT AND        }
REPAIR; dba JAKE'S EQUIPMENT AND          }
REPAIR, INC, *et al*,                     }
                                          }
        Defendants.                       }

## OPINION & ORDER

Pending before the Court are Plaintiff Petroworks S.A.'s ("Petroworks") Motion

for Summary Judgment (Doc. 55); and Defendant Jake's Equipment & Repair, LLC's ("Jake's")

Response in Opposition to Motion for Summary Judgment (Doc. 63).  For the reasons explained

below, Plaintiff's Motion for Summary Judgment is GRANTED.

### I.      Background & Relevant Facts.

`               This dispute concerns the return of certain equipment associated with drilling rigs

for the oil business.  Petroworks is in the business of buying rigs and lending them out for

use in the oil business.  Jake's is in the business of repairing and refurbishing oil equipment.

Petroworks bought four used rigs and contracted with Jake's to refurbish them in order that

Petroworks could then rent them out.  Doc. 62 at 2.

In March, 2006, Petroworks delivered the rigs to Jake's place of business.  *Id.*

Jake's failed to refurbish the rigs according to the original and a modified schedule.  Doc. 19 at

1-3.  Consequently, Jake's voluntarily returned all rigs except one.  *Id.*  Jake's attempted to keep

the last rig as collateral for monies it claimed were still owed it by Petroworks for partial

refurbishment work.  *Id.*  On June 29, 2007, this Court granted a preliminary injunction to Petroworks allowing it to recuperate the last rig because of the danger of ongoing damage to the rig from weather and theft where it was kept at Jake's.  *See generally* Doc. 19.

On February 13, 2008, the parties held a settlement conference before Magistrate Judge Stacy.  *See generally* Doc. 58.  The subject of the settlement was the return of pieces of equipment that were associated with the rigs Petroworks had contracted with Jake's to refurbish.  *Id.*  The result of the settlement was that Jake's agreed to return this equipment refurbished with an accompanying one year warranty within certain deadlines.  *Id.*  Specifically, Jake's was to return an IDECO 17 ½ rotary table, an IDECO H37 gear box with housing adapter, and a pulsation damper.  *Id.* at 6-7.  This equipment had considerable value.  Plaintiff's conservative estimate, which Defendant does not dispute, is that the rotary table is worth $52,000.00, the gear box is worth $48,600.00 and the pulsation damper is worth $10,125.00, for a total value of $110,725.00.  Doc. 55 at 4.  According to the record of the settlement conference, the parties agreed the pulsation damper and gear box would be ready in two weeks, and the rotary table within at most six weeks.  Doc. 58 at 8.

On January 12, 2009, Petroworks brought a motion for summary judgment seeking damages for breach of this settlement agreement.  *See generally* Doc. 55.  Jake's does not dispute it was unable to deliver the gear box and rotary table within the deadline.  *See generally* Doc. 63.  Jake's counters, however, that it offered to deliver the pulsation damper within the deadline but that Petroworks refused to accept it without the delivery of the other two pieces of equipment.

## II.   **Standard of Review for Summary Judgment.**

A party moving for summary judgment must inform the court of the basis for the

motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not

competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).  In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible,

though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.   <u>**Analysis.**</u>

Petroworks titles the present motion as a motion for final summary judgment. The motion was filed on January 12, 2009. It addressed breach of the settlement agreement. On September 30, 2008, Petroworks filed a first amended complaint, which changed the first initial pleading only to add a claim for breach of the settlement agreement. Petroworks sought a number of other forms of relief regarding "Rig 3" in the initial pleading and the amended one. These other claims were presumably resolved by the settlement, so that a motion for final summary judgment is appropriate.

Petroworks seeks the full monetary value for the equipment that Jake's was meant to deliver under the settlement agreement. Jake's argues that, because Petroworks refused to accept the pulsation damper when it was ready for delivery, Petroworks is the party in material breach of the agreement. Alternatively, Jake's argues that Petroworks has failed to mitigate its damages by refusing to accept the pulsation damper. Jake's argues with respect to the rotary table and gear box, that due to unforeseen complication in obtaining replacement parts for these, the contract is excused due to impossibility or impracticality. Alternatively, Jake's argues that the contract is excused due to mutual mistake regarding the feasibility of refurbishing the rotary table and gear box within the delivery deadlines.

i.   **Whether Jake's Owes No Damages Because Petroworks is in Material Breach of the Settlement Agreement.**

Jake's argues that because Petroworks refused to accept the pulsation damper until Jake's was ready to also deliver the rotary table and gear box, it was Petroworks who failed to perform. Thus, according to Jake's, Petroworks is in material breach of the agreement and

Jake's is excused from further performance.  When a party materially breaches a contract, the

other party may treat the contract as ended and cease performance.  *Interceramic, Inc. v. South*

*Orient R.R. Co.*, 999 S.W.2d 920, 924 (Tex. App. 1999).  Thus, a party who fails to perform his

obligation may not thereafter enforce the remaining terms of the contract against the other party.

*Id.*

The Restatement lists five circumstances significant in determining whether a

failure to perform is material:

> (a) the extent to which the injured party will be deprived of the benefit which he
> reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the
> part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will
> suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure
> his failure, taking account of the circumstances including any reasonable
> assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to
> perform comports with standards of good faith and fair dealing.

*Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004) (*citing*

RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)).  Here, Jake's fails to

demonstrate it suffered any injury by not being able to deliver the pulsation damper until the rest

of the equipment was ready, so (a) there is no injury and (b) there is no need for compensation.

On the other hand, one can hardly reward Jake's failure to prepare the other pieces of equipment

by letting Jake's off the hook on the need to refurbish and return them so (c) the extent of

forfeiture is great.  The last two factors are not relevant.

The Restatement also articulates circumstances that are significant in determining

when a party's duties are discharged under a contract due to the other party's material breach. The

relevant factors, in addition to those listed above, are:

> (1) the extent to which it reasonably appears to the injured party that delay may
> prevent or hinder him in making reasonable substitute arrangements.

> (2) the extent to which the agreement provides for performance without delay, but
> a material failure to perform or to offer to perform on a stated day does not of
> itself discharge the other party's remaining duties unless the circumstances,
> including the language of the agreement, indicate that performance or an offer to
> perform by that day is important.

*Mustang Pipeline Co.*, 134 S.W.3d at 199 (*citing* RESTATEMENT (SECOND) OF

CONTRACTS § 242 (1981)).  The deadlines imposed in the settlement agreement were wholly

for Petroworks benefit.  Thus, it makes no sense to excuse Jake's further performance because

Petroworks refused to accept the pulsation damper until the other equipment was ready.  If

anything, this extended the deadline on the gear box, providing a benefit to Jake's.  Jake's does

not claim that Petroworks was going to refuse to accept performance of the contract *as a whole*.

        In fact, Petroworks actions were designed to ensure performance.  Jake's proved

in the past to be an unreliable contracting party, twice breaching contracts with Petroworks to

refurbish rigs by fixed dates.  Jake's also has a history of doing partial work, with respect to the

rigs leaving one partly refurbished and two others untouched after over a year passed.  Jake's, in

fact, does not dispute that this is the case here where Jake's failed to refurbish the more valuable

equipment.  In these circumstances, it is understandable that Petroworks refused to accept

delivery of the pulsation damper without the rest of the equipment owed.  There is no question

that Petroworks is not in material breach and that Jake's is not excused from its obligations just

because Petroworks refused to accept delivery of the pulsation damper on its own.

ii.     **Whether Petroworks Failed to Mitigate Its Damages.**

Petroworks seeks the market value of all three pieces of equipment as compensation for total breach of the settlement agreement.  Jake's argues in the alternative that because Petroworks failed to mitigate its damages by refusing to accept the pulsation damper on its own, fact issues remaining preclude summary judgment on this issue. However, the doctrine of mitigation of damages is inapplicable to this case.  This doctrine prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff.  *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995).  Mitigation occurs after breach.  Petroworks, by insisting on delivery of all the equipment together, did not act after breach but before breach.

The issue correctly construed is one of whether the refusal of part performance defeats a claim by Petroworks for total breach.  In deciding this one must bear in mind that the pulsation damper had a market value of $10,125.00 and the total value of the settlement agreement to Petroworks is $110,725.00.  Thus, the pulsation damper was worth less than ten percent of the value of the agreement.  Jake's is in material breach of the agreement by failing to deliver the rotary table and gear box which constitute over ninety percent of the value of the contract.  It is true that different timetables were set for delivery of three pieces of equipment suggesting the parties contemplated Petroworks would receive them at different times.  The agreement, however, did not require Petroworks to accept delivery when the pulsation damper was ready.  Instead the settlement agreement was effectively conditioned on Jake's delivering all three pieces of equipment, which it failed to do.  Having failed to do that, Petroworks should be made whole by allowing it to recover the cash equivalent so it can purchase all three pieces of equipment from a third party.  The refusal to accept part performance should not detract from the

ability to recover for total breach if (1) the parties did not contract to accept part performance in lieu of full performance; and if (2) the circumstances show the refusal was reasonable because full performance would not be forthcoming.

     **iii.**          **Whether the Contract is Excused by Reason of Impossibility or Impracticality.**

Jake's argues that its obligations under the settlement agreement should be excused due to impossibility or impracticality.  Jake's argues it was unable to complete the contract, because "[w]ith respect to the rotary table at issue, once Jake's opened it to begin work it was discovered that the gears were "shot" and had to be replaced completely."  Doc. 63 at 5. Because the gears were not standard, Jake's alleges it will take 53 weeks to replace them, as opposed to the six week deadline it agreed to.  Jake's further alleges that "[s]imilarly, when the gear box was opened, it was discovered that the bearings had to be replaced."  *Id*. at 6.  Jake's then blames the original equipment manufacturer for providing incorrect plans for the gear box "thereby thwarting Jake's efforts at finding proper replacement bearings within the delivery deadline."  *Id*.

The doctrine of impossibility is sometimes referred to as "impracticability." *Tractebel Energy Marketing, Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 64-65 & n.6 (Tex. App. 2003). Impossibility is defined as "that which, in the constitution and course of nature or the law, no person can do or perform." Black's Law Dictionary 755 (6th ed. 1990). "Impossibility of performance of contract" is defined as a "doctrine under which a party to a contract is relieved of his or her duty to perform when performance has become impossible or totally impracticable (through no fault of the party)." *Id*. The definition goes on to note that an action may be legally impossible if it is impracticable, meaning "when it can only be done at an

excessive and unreasonable cost." *Id.*; *see also* Restatement (Second) of Contracts § 261, cmt. d (1981) (" 'impracticability' means more than 'impracticality'").

Foreseeability is one factor used to decide which party assumed the risk of impossibility. *Houston Ice & Brewing Co. v. Keenan, 88 S.W. at 198* (impossibility defense failed because the "probability" of the unanticipated occurrence was known to the party seeking relief before contracting).  The foreseeability factor has gradually decreased in importance but maintains relevant, and, within the discretion of the Court, may be decisive.  It is here.  Jake's defense is one of existing impracticability because the fact that the rotary table's gears were no longer usable and that the gear box's bearings were also no longer usable was an existing occurrence when the settlement agreement was reached, although Jake's was unaware of it.  The Restatement Second of Contracts defines existing impracticability as follows:

> Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

*See* RESTATEMENT (SECOND) OF CONTRACTS § 266 (1981).  It cannot be said that Jake's, a place of business that refurbishes oil industry equipment, and that came into possession of the rotary table and gear box in March 2006 and was in possession of them when the settlement agreement was reached in February 2007, and who had contracted to refurbish the rotary table and gear box, had "no reason to know" that this second-hand equipment might have damaged parts that might be hard to replace.  Jake's had the expertise regarding refurbishing this equipment and had possession of the equipment when it contracted to deliver them under the settlement agreement.  Contract law must protect the party who pays to allocate risk.  In this case, Petroworks must be protected in its decision to abandon claims against Jake's in return for

delivery of this equipment. The settlement agreement allocated the risk to Jake's that it would be unable to deliver the equipment refurbished.   That must have been the common sense expectation of the parties given the circumstances in which Jake's had already failed several times to refurbish equipment on schedule, and the settlement agreement came as a resolution of that failure.

The law cannot protect and so effectively reward Jake's for failing to open either the rotary table or gear box in order to assess how long it would take to repair them before promising Petroworks they would be ready by a certain time. Otherwise, Jake's would reap a windfall by having wrongfully induced Petroworks reliance on its assurances at settlement to get Petroworks to abandon claims against Jake's.   Jake's benefited from being relieved of the pressure of litigation in the meantime.   The law must act to encourage intelligent decision-making at the time of contracting.   In conclusion, the Court finds Jake's claim to a defense of impracticability/impossibility to be without merit.

### iv.        Whether the Contract is Excused on the Grounds of Mutual Mistake.

Jake's argues that the contract is voidable by Jake's on the grounds of mutual mistake.  The Restatement Second of Contracts defines mutual mistake as follows:

> (1)  Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
> (2)  In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

*See* RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981).  The mistake at issue is how soon the equipment could be repaired because, upon opening the rotary table and gear box,

11 / 13

Jake's encountered difficulties finding replacement parts.  Jake's bears the risk of that mistake.

The Restatement Second of Contracts defines who bears the risk of mistake as follows:

> A party bears the risk of a mistake when
>
> (a)  the risk is allocated to him by agreement of the parties, or
>
> (b)  he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c)  the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

*See* RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981).  Risk can be allocated to Jake's under either (a), (b) or (c).  As discussed above, under (a), the agreement implicitly allocated the risk the equipment would not be ready on time to Jake's.  Under (b). Jake's had the equipment in its possession when it promised to refurbish it and provide it to Petroworks.  Thus, Jake's acted with limited knowledge as to how long it would take to repair the equipment because Jake's failed to inspect the equipment in advance, and treated this knowledge as sufficient.  Under (c) also, the Court finds it reasonable to allocate the risk to Jake's in these circumstances.  Jake's had previously breached two contracts to refurbish the rigs of which the equipment at issue was a part.  Jake's had the equipment at issue for almost a year when it agreed to refurbish it and deliver it to Petroworks within the delivery deadline.  The settlement agreement was meant as a final resolution between the parties, and Jake's current arguments would undo the purposes of the settlement.  Thus, Jake's bears the risk of this mistake.  In conclusion, Jake's argument to undo the contract based on mutual mistake is groundless.

      **v.**         **Attorney Fees.**

Plaintiff requests an award of attorney fees but has not addressed why the presumption of no award should be overturned.  Consequently, plaintiff's request is denied.

**IV.**    <u>**Conclusion.**</u>

Jake's has, through its own fault, been unable to perform the terms of the settlement agreement.  It is fitting then that Petroworks be made whole by an award of the market value of the goods due to them under the agreement.

Accordingly, it is hereby ORDERED that Plaintiff Petroworks S.A.'s Motion for Summary Judgment is GRANTED.  Plaintiff is awarded $110,750.00 in damages for breach of the Settlement Agreement.

SIGNED at Houston, Texas, this 17th day of March, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE